UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA HOTELS AND LODGING ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF OAKLAND,<br><br>Defendant. | Case No. 19-cv-01232-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 27, 28 |

In November 2018, voters in the City of Oakland (the "City") passed Measure Z to impose new requirements on hotel operators in the City by adding Chapter 5.93 to the Oakland Municipal Code. Complaint ("Compl.") at ¶ 1 [Dkt. No. 1]. Plaintiff California Hotel & Lodging Association ("CHLA") filed a complaint to enjoin enforcement of Section 5.93.030(B) (hereinafter the "Room Cleaner Provision"), arguing that it is preempted by state occupational and health standards. CHLA also seeks to enjoin Section 5.93.040 (hereinafter the "Wage/Benefit Provision") as preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001 et seq. It seeks declaratory relief on both provisions and moves for summary judgment on its claims. Defendant City and defendant intervenor Unite Here Local 2850's (the "Union") filed separate motions to dismiss the complaint. I heard argument on each motion on June 19, 2019. Preemption does not apply, the challenged provisions are not vague, and for the reasons below, I deny CHLA's motion, grant the motions of both the City and the Union, and dismiss this case.

## BACKGROUND

Measure Z asked voters the following question:

Shall the measure amending Oakland's Municipal Code to: (1)

> establish workplace protections and minimum hourly wage of $15 with benefits or $20 without benefits, increasing annually with inflation, for employees of Oakland hotels with 50 or more guest rooms; (2) authorize administrative enforcement standards for hotel and non-hotel workers; and (3) create City department to administratively enforce Oakland's employment standards for hotel and non-hotel workers, be adopted?

*Id.* at ¶ 11. After approval by the voters, Chapter 5.93 (the "Ordinance") was added to the Oakland Municipal Code. It applies to "hotel employers" and "hotel employees." A hotel employer is defined as "a person who owns, controls, and/or operates a hotel in the City of Oakland." Section 5.93.010. A hotel employee is defined as "any individual (1) who is employed directly by the hotel employer or by a person who has contracted with the hotel employer to provide services at a hotel in the City of Oakland; and (2) who was hired to or did work an average 5 hours/week for 4 weeks at one or more hotels." *Id.* Room cleaners are a subset of hotel employees "whose principal duties are to clean and put in order residential guest rooms in a hotel, regardless of who employs the person." *Id.*

Under the heading "Humane workload," the Room Cleaner Provision states:

> A. Purpose. Hotel employees who clean guest rooms are frequently assigned overly burdensome room cleaning quotas and unexpected overtime, which undermines the public interest in ensuring that hotel room cleaners can perform their work in a manner that adequately protects public health and interferes with their ability to meet family and personal obligations. This provision assures that workers receive fair compensation when their workload assignments exceed proscribed limits and prohibits hotel employers from assigning hotel employees overtime work when their shifts exceed 10 hours in a day, except in emergency situations, without obtaining workers' informed consent.
>
> B. A hotel employer shall not require a room cleaner to clean rooms amounting to more than 4,000 square feet of floorspace, or more than the maximum floor space otherwise specified in his Section, in any one, eight-hour workday unless the hotel employer pays the room cleaner twice his or her regular rate of pay for all hours worked by the room cleaner during the workday. If a room cleaner works fewer than eight hours in a workday, the maximum floor space shall be reduced on a prorated basis. When a room cleaner during a workday is assigned to clean any combination of seven or more checkout rooms or additional bed rooms, the maximum floorspace to be cleaned shall be reduced by 500 square feet for each such checkout or additional-bed room over six. The limitations contained herein apply to any combination of spaces, including guest rooms and suites, meeting rooms or hospitality rooms, and apply regardless of the furniture, equipment or amenities in any room.

2

Section 5.93.030. The Room Cleaner Provision went into effect on December 21, 2018. Compl. at ¶ 12.

Measure Z also supplemented enforcement mechanisms codified in Section 5.92.050 to include a $50 penalty per employee, per day, for violations of the Room Cleaner Provision, with the penalty amount to be updated annually for inflation. Section 5.92.050(G)(2). Hotel employees were also given a private right of action to seek damages and could recover penalties for alleged violations, attorneys' fees, and costs if they were the prevailing party in a civil action. Section 5.92.050(G)(3).

The Wage/Benefit Provision states:

> A. Effective July 1, 2019, hotel employers shall pay hotel employees a wage of no less than $15.00 per hour with health benefits, not including gratuities, service charge distributions, or bonuses, or $20.00 per hour without health benefits, not including gratuities, service charge distributions, or bonuses.
>
> B. Health benefits under this Section shall consist of the payment of the difference between the higher wage and lower wage under Section 5.93.040(A) towards the provision of hear care benefits for hotel employees and their dependents. Proof of the provision of these benefits must be kept on file by the hotel employer, if applicable.
>
> C. The wage rates set forth in this Section shall be adjusted for inflation annually in the manner set forth in Section 5.92.020(B).

Section 5.93.040. It is effective on July 1, 2019. Compl. at ¶ 12. Hotel employers are required to maintain detailed records and "proof of health benefits" for three years. Section 5.93.050(A). If the hotel employer does not provide access to these records, "it shall be presumed . . . [that] the hotel employer paid the hotel employee no more than the applicable federal or minimum wage." Section 5.93.050(B)(3).

On March 7, 2019, CHLA filed a complaint against the City containing four causes of action. The first cause of action is for declaratory relief and an injunction against the Room Cleaner Provision as preempted by the California Occupational Safety and Health Act of 1973. Compl. at ¶¶ 34-55. The second cause of action seeks declaratory relief and an injunction against both the Room Cleaner Provision and the Wage/Benefit Provision for being unconstitutionally vague under the United States Constitution's due process clause. *Id.* at ¶¶ 56-63. The third cause

3

of action is duplicative of the second cause of action but is based on the California Constitution's due process clause. *Id.* at ¶¶ 64-71. The fourth cause of action seeks declaratory and injunctive relief against the Wage/Benefit Provision as being preempted by ERISA. *Id.* at ¶¶ 72-78.

On April 19, 2019, I issued an order granting the Union's unopposed motion to intervene. [Dkt. No. 21]. On May 10, 2019, CHLA moved for summary judgment on all of its claims. [Dkt. No. 26]. That same day, the Union and the City filed separate motions to dismiss. [Dkt. Nos. 27, 28]. Because the three motions depend on essentially the same arguments, they will be considered together.

## LEGAL STANDARD

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject

4

matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

As the Ninth Circuit has articulated, in California:

> "All political power is inherent in the people," and that to that end, Article II, section 8(a) of the California Constitution provides, "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." We are also aware that the Supreme Court of California has described the initiative power as "one of the most precious rights of our democratic process," and indeed, that "the sovereign people's initiative power" is considered to be a "fundamental right." Finally, we are aware of California law that the courts have a "solemn duty to jealously guard" that right, "and to prevent any action which would improperly annul that right[.]"

*Perry v. Schwarzenegger*, 628 F.3d 1191, 1196 (9th Cir. 2011) (internal citations omitted). Courts "*are required to resolve any reasonable doubts in favor of the exercise of this precious right*." *Brosnahan v. Brown*, 32 Cal. 3d 236, 241 (Cal. 1982) (emphasis in original). It is with this in mind that I consider CHLA's arguments on why portions of Measure Z are preempted and void for vagueness.

# I. PREEMPTION

## A. CalOSHA

CHLA seeks declaratory and injunctive relief against the Room Cleaner Provision because it is preempted by the California Occupational Safety and Health Act ("CalOSHA"), which in conjunction with California Labor Code Section 142.3, vests the California Occupational Safety and Health Standards Board (the "Standards Board") with the sole authority to adopt occupational safety and health standards. Compl. ¶ 34-55. In *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893 (Cal. 1993), the California Supreme Court set out the standard for state preemption of a local ordinance as follows:

> Under . . . the California Constitution, a county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws. If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void. A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication. Local legislation is 'duplicative' of general law when it is coextensive therewith. Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area or when it has impliedly done so . . .

*Id.* at 897-98 (internal quotation marks and citations omitted).

CHLA moves for summary judgment, arguing that because the legislature has intended decisions by the Standards Board to occupy the entire field of safety and health standards, field preemption applies and the Room Cleaner Provision must be struck down. Plaintiff California Hotel & Lodging Association's Notice of Motion and Motion for Summary Judgment or, in the Alternative Partial Summary Judgment ("MSJ") at 5-11 [Dkt. No. 26]. It also contends that even if CalOSHA does not expressly preempt local government regulation of such matters, they are preempted by implication because the Room Cleaner Provision concerns excessive work rate and the Standards Board has already adopted a safety standard regulating hotel housekeeper work rates. MSJ at 11-12. It points to the Standards Board's requirement that hotels establish, implement, and maintain an effective, written, musculoskeletal injury prevention program ("MIPP") under 8 Cal. Code Regs. tit. 8, § 3345. *Id.*

The City and Union oppose CHLA's motion and move to dismiss its claim because the Room Cleaner Provision is not an occupational safety and health standard. Defendant's Opposition to Plaintiff's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("City MSJ Oppo.") at 6-12; Opposition of Intervenor Unite Here Local 2850 to Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment of Plaintiff California Hotel & Lodging Association ("Union MSJ Oppo.") at 3-13; Notice of Motion and Motion to Dismiss at 15-19 ("City MTD") [Dkt. No. 28]; Notice and Motion to Dismiss Complaint for Declaratory and Injunctive Relief at 9-13 ("Union MTD") [Dkt. No. 27]. Instead, they claim that the Room Cleaner Provision is an overtime law and its enactment does not intrude on the prerogatives of the Standards Board. *Id.* They contend that the Room Cleaner Provision does not prohibit the assignment of "unsafe" levels of work, as a safety and health standard would. *Id.* Rather, it is a form of overtime protection designed to effectuate Measure Z's prohibition against mandatory overtime and to prevent hotel employers from simply increasing a room cleaner's workload during an eight-hour shift. *Id.* The Union points out that no California workplace-safety standard permits an employer to impose an unsafe working condition on its employees as long as they are paid more. Union MTD at 9.

According to the City, CHLA seeks to extend the reach of CalOSHA beyond its terms. City MTD at 17-18. It points to Cal. Lab. Code § 6316, which states that "[e]xcept as limited by Chapter 6 (commencing with Section 140) of Division 1, nothing in this part shall deprive the governing body of any county, city, or public corporation, board, or department, of any power or jurisdiction over or relative to any place of employment." Chapter 6 also states that "[n]othing in this section shall affect or limit the authority of any state or local agency as to any matter other than the enforcement of occupational safety and health standards adopted by the [Standards Board]; however, nothing herein shall limit or reduce the authority of local agencies to adopt and enforce higher standards relating to occupational safety and health for their own employees." Cal. Lab. Code § 144. The City argues that there is no field preemption here because it "generally exists where the Legislature has comprehensively regulated in an area, leaving no room for additional local action[,]" and these measures still allow localities to regulate places of

8

employment. City MTD at 17 (*citing T-Mobile West LLC v. San Francisco*, 6 Cal. 5th 1107, 1122 (Cal. 2019).

As the City argues, the Room Cleaner Provision does not contradict state law because it is not inimical to any portion of CalOSHA; it does not address what wages must be paid to hotel workers when they clean more than a certain amount of square footage in a day. *Id.* (*citing Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1150 (Cal. 2006)). Both CalOSHA and the Labor Code explicitly leave room for local control of aspects of employment unrelated to safety and health. Neither law addresses what wages must be paid to hotel workers based on the amount of square footage cleaned.

Further, I am not persuaded by CHLA's citation to the Standards Board's rejection of the Union's proposed absolute ceiling on workloads. In 2012, the Union filed a petition with the Standards Board to place a ceiling of 5,000 square feet of total room space that an employer may regularly assign housekeepers to clean during an eight-hour shift. Compl. at ¶¶ 42-45. The resulting administrative process resulted in a rejection of the proposed ceiling and the establishment of the MIPP. *Id.* at ¶¶ 46-51. CHLA claims that this constitutes a clear pattern of regulation regarding occupational safety and health matters affecting hotel housekeepers, including "excessive work rate." It argues that the Standards Board's refusal to include a specific administrative control measure advocated for by the Union means that the agency has occupied the field and supports a finding of implied preemption. MSJ at 12.

The Standards Board's rejection of the Union's proposal and adoption of the MIPP is not relevant to the Room Cleaner Provision's overtime mandates. As the City argues, the MIPP illustrates what a true occupational health and safety standard looks like. The MIPP's scope is "intended to control the risk of musculoskeletal injuries and disorders to housekeepers in hotels and other lodging establishments," describes the nature of potential injury (acute injury to a muscle, tendon, ligament, etc.), and requires employers to conduct a worksite evaluation to identify potential injury risks (slips, trips, falls, lifting, pressure points, excessive work rate, etc.). Cal. Code Regs. tit. 8, § 3345. The regulation is silent about pay, unlike the Room Cleaner Provision, which conversely does not describe potential injuries or particular risks, including work

9

rate. These differences are not, as CHLA urges, distinctions without a difference. MSJ Reply at 4-5.

The City of Emeryville adopted a similar provision that was found to be an overtime law. *See Woodfin Suite Hotels LLC v. City of Emeryville*, No. 06-cv-1254-SBA, 2006 WL 2739309, *1 (N.D. Cal. Aug 23, 2006). In November 2005, voters in the Emeryville passed Measure C, requiring hotels with more than 50 rooms to pay time-and-a-half to room cleaners who cleaned more than 5,000 square feet in an eight-hour work day. *Id.* The plaintiff argued that the ordinance was preempted by state overtime laws that placed a premium solely on the number of hours worked. *Id.* at *18. The court disagreed and held that "Measure C does not alter the overtime premium payment for the number of hours worked, it only adds [ ] an occasion for which overtime premium must be paid[.]" *Id.* Although the issue of CalOSHA preemption was not raised in *Woodfin*, its reasoning is analogous and persuasive; I find that the Room Cleaner Provision in this case is also an overtime provision and is not preempted by state laws regulating only health and safety.

CHLA's contention that California overtime law can only require additional compensation based on the number of hours worked, not the amount of work done, is directly contradicted by *Woodfin*. Although CHLA argues that it would be absurd to double the employee's rate of pay for the entire work shift if an employee cleaned only one inch of floor space in excess of the prescribed limit, this speaks to the wisdom of the voters of Oakland in enacting the Ordinance, not whether the Room Cleaner Provision is preempted. I am similarly unpersuaded that CHLA's discussion of legislative history is germane because it is uncontroverted that CalOSHA is the only agency authorized to adopt state occupational safety and health standards.

*California Grocers Assn. v. City of Los Angeles*, 52 Cal. 4th 177 (Cal. 2011) is also instructive. There, a local ordinance required grocery stores of a certain size undergoing a change in ownership to retain current employees during a 90-day transition period. *Id.* at 187-88. The court held that the ordinance was not preempted by the state Food and Retail Code because the code related only to health and sanitation and the ordinance imposed no substantive food safety standards. *Id.* at 189. Instead, it regulated how a new grocery store owner could select its

10

workforce during an ownership transition. *Id.* The court found that even if the promotion of health and safety was one of the city's purposes in passing the ordinance, that did not make it automatically preempted; it was only a factor in a nuanced inquiry into whether the effect of the ordinance would regulate a field that the state had reserved to itself. *Id.* at 190.

As in *Grocers*, even if one of the purposes of Measure Z was to affect the work rate of room cleaners, it may promote some of the same goals as CalOSHA without entering the field vested to CalOSHA and the Standards Board. *Id.* at 192. The Room Cleaner Provision does not establish a specific uniform health and safety standard and is not preempted. Accordingly, CHLA's motion for summary judgment on its first claim is denied, and the City and Union's motions to dismiss the first claim are granted with prejudice.

**B.     ERISA**

CHLA seeks declaratory and injunctive relief against the Ordinance on the basis that it is preempted by ERISA because it only applies to hotel employers and discusses the health benefits that are provided to their employees. Compl. at ¶¶ 19-33, 72-78. Section 514(a) of ERISA provides that ERISA will "supersede any and all State laws" to the extent that those laws "relate to" any employee benefit plan subject to ERISA. 29 U.S.C. § 1144(a). The term "State law" includes statutory, regulatory, and common law. 29 U.S.C. § 1144(c). At one time, the Supreme Court characterized the scope of ERISA's preemption language as "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). "More recently, however, the Court has moved away from a literal reading of 'relate to,' towards a more narrow interpretation of the phrase and its preemptive scope." *Graham v. Balcor Co.*, 146 F.3d 1052, 1054 (9th Cir. 1998). In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655 (1995), the Court noted that while the text of ERISA is expansive, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.' " (citation omitted).

CHLA moves for summary judgment on its ERISA preemption claim on several grounds. MSJ at 13-20. As an initial matter, CHLA claims that hotel employers "would incur even greater expense in the event they were to make direct payments to the employees in accordance with

11

Section 59.3.040, rather than providing health benefits through an ERISA plan," but this is clearly incorrect. Compl. at ¶ 75. The Wage/Benefit Provision requires payment of $20.00 per hour without health benefits or $15.00 per hour with health benefits valued at $5.00 per hour. If an employer can provide an ERISA plan that costs less than paying the employee $5.00 an hour while providing benefits valued at $5.00 per hour, it will save money. If it cannot, it can simply pay the employee the additional $5.00 an hour.

CHLA also asserts that the Wage/Benefit Provision effectively mandates hotel employers to: (i) amend existing ERISA employee benefit plans; (ii) establish ERISA employee benefit plans if they do not already have one; and (iii) make direct payments to the employee, without any constraint on the employee's use of the money if the employer chooses not to pay into an ERISA plan. *Id.* But the lack of constraints on the employees' use of the additional $5.00 per hour is not unlawful and does not obligate employers to provide health benefits. Employers can pay $20.00 an hour and fully comply with the Ordinance. If, instead, it makes more sense under the Wage/Benefit Provision to pay into an ERISA plan, preemption is not triggered because such influence is permissible. *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 656 (9th Cir. 2008) (San Francisco adopted an ordinance creating its own healthcare plan and the court found the ordinance was not preempted because an "employer may choose to adopt or to change an ERISA plan in lieu of making the required health care expenditures to the City . . . because, when faced with an unavoidable obligation to make a payment at a certain level, it may prefer to make that payment to an ERISA plan . . . [and] such influence is entirely permissible.").

### 1. Reference to ERISA

CHLA next claims that the Wage/Benefit Provision references to ERISA by alluding to ERISA plans and contains a direct reference to an employer-provided health benefit plan as defined by ERISA because the amount of wages paid depends on whether the employer provides health benefits. *Id.* at 15-17. In support of its argument, CHLA relies heavily on *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125 (1992). In *Greater Washington*, the Supreme Court found that an ordinance that required employers to provide health insurance to employees who were eligible for workers compensation was preempted by ERISA. *Id.* The Court

12

reasoned that the ordinance was preempted because it "specifically refers to welfare benefits plans regulated by ERISA" by referring to "health insurance coverage provided by the employer." *Id.*

The doctrine of what constitutes a "reference" for the purposes of ERISA preemption has been narrowed since *Greater Washington*. As the Ninth Circuit articulated in *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*:

> [U]nder the modern approach a state law is not preempted merely because it has a literal "connection with" an ERISA plan. *Cf. Greater Washington*, 506 U.S. at 129-30. Instead, the law must actually " 'govern[ ] . . . a central matter of plan administration' or 'interfere[ ] with nationally uniform plan administration.' " [*Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016)] (emphasis added) (*quoting* [*Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)]). Similarly, a state law is no longer preempted simply because it makes literal "reference to" an ERISA plan. *Cf. Greater Washington*, 506 U.S. at 130. Instead, it must both identify ERISA plans and " '*act*[ ] immediately and exclusively *upon* ERISA plans' " or make " 'the existence of ERISA plans . . . essential to the law's operation.' " *Gobeille*, 136 S.Ct. at 943 (emphasis added) (*quoting* [*California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325 (1997)]).

903 F.3d 829, 847 (9th Cir. 2018), reh'g en banc granted, 923 F.3d 1162 (9th Cir. 2019).

Here, the Ordinance does not identify any ERISA plans or act immediately and exclusively upon those plans. The City has identified a number of cases since *Greater Washington* where courts have rejected ERISA preemption claims against laws that conditioned the amount of an employees' cash wages on the provision of health benefits. MSJ City Oppo. at 13 (*citing WSB Elec., Inc. v. Curry*, 88 F.3d 788, 793 (9th Cir. 1996) (upholding California law requiring payment of prevailing wage through either cash wages or a combination of cash wages and benefits); *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 97 F. Supp. 3d 1256, 1283 (W.D. Wash. 2015) (local ordinance allowing large employers who provided health benefits more time to comply with a higher minimum wage did not affect ERISA plans, require any employer to provide benefits through ERISA plans, or dictate the contents of any such plan); *Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981, 1003 (C.D. Cal. 2013) (municipal living wage ordinance does not have a "reference to" employee benefits plans merely because it takes into account what health benefits employers offer in calculating the cash wage that must be paid); *Woodfin*, 2006 WL 2739309, at *15 (upholding city ordinance requiring minimum hourly compensation to hotel

13

workers through either cash wages or a combination of wages and health benefits)).

CHLA unpersuasively argues that *Greater Washington's* analysis should still apply notwithstanding the cases just cited. Critically, the structure of the Wage/Benefit Provision is similar to San Francisco's ordinance that the Ninth Circuit upheld in *Golden Gate,* distinguishing *Greater Washington*'s holding in the process. The Ninth Circuit reasoned that:

> There is a critical distinction between the ordinance in *Greater Washington* and the Ordinance in this case. Under the ordinance in *Greater Washington*, obligations were measured by reference to the level of benefits provided by the ERISA plan to the employee. Under the Ordinance in our case, by contrast, an employer's obligations to the City are measured by reference to the payments provided by the employer to an ERISA plan or to another entity specified in the Ordinance, including the City.

546 F.3d at 658. Here, the Wage/Benefit Provision does not even mention ERISA and an employer's obligations are not measured by reference to an ERISA plan. Also, like the ordinance in *Golden Gate*, an ERISA plan is not essential to the operation of the Ordinance because a hotel employer may simply pay a different entity to be in compliance. In *Golden Gate* that entity was the city and county of San Francisco, and under the Wage/Benefit Provision it is the employee.

CHLA argues that unlike in *Golden Gate*, there is no presumption against preemption here because the City has targeted an area that states do not traditionally occupy. MTD Oppo. at 24. But it is "well settled that wages are a subject of traditional state concern." *WSB Elec.*, 88 F.3d at 791. CHLA cannot establish that the Ordinance references ERISA for the purposes of preemption.

### 2. Connection with ERISA Plans

CHLA also claims that the Wage/Benefit Provision has a connection with employer's administration of health benefits in terms of eligibility, reporting and disclosure, and enforcement, thus bringing it beyond the scope of state law that Congress intended to survive preemption. MSJ at 17-20. It argues that the Wage/Benefit Provision effectively removes an employer's ability to establish eligibility requirements because the statute applies to any hotel employee who "work[s] an average of 5 hours a week for 4 weeks at one or more hotels[,]" creating a different maximum waiting period between ERISA, the Affordable Care Act, and the Wage/Benefit Ordinance. MSJ at 18. But this is not true because the Ordinance does not require a hotel employer to provide

14

health benefits; the employer may instead pay an additional $5.00 per hour in cash wages.

CHLA also contends that the Ordinance creates an administrative burden on hotel employers in two separate ways. First, it requires employers to track the prescribed amount of hours worked, rather than days. Second, it mandates that employees maintain and make available records about each employees name, hours worked, pay rate, and proof of health benefits. *Id.* at 19. CHLA asserts that this would require hotel employers to keep certain records in some states and not others, thus disrupting ERISA's uniform recordkeeping requirement. *Id.* It also claims that ERISA already requires disclosure of relevant plan documents on request and limits the amount an employer can charge to a reasonable rate, but that the Wage/Benefit Provision would also require employers to provide proof of health benefits for free, altering uniform administration of ERISA's disclosure laws. *Id.* at 20.

These arguments fail for the same reason: the test is not whether a wage law imposes additional administrative burdens on the employer, it is whether the law imposes additional administrative requirements on ERISA plans themselves. *Calop*, 984 F. Supp. 2d at 1005 (*citing WSB Electric*, 88 F.3d at 795). The administrative "burdens" described by CHLA do not require ERISA plans to do any reporting. CHLA's citation to *Gobeille* is not on point because there, the preempted state law required ERISA plans to report. Compl. at ¶ 77.

CHLA's assertion that the Ordinance's enforcement provision conflicts with ERISA fails for a similar reason. MSJ at 20. The Ordinance's enforcement provisions only apply to the relationship between the City and hotel employers. Nothing in its terms allows the City to bring any enforcement action against an ERISA plan or any fiduciary of a plan. CHLA cannot establish that the Ordinance references to, or has a connection with, ERISA. Its motion for summary judgment on its fourth claim for injunctive and declaratory relief based on ERISA preemption is denied. The City and Union's motions to dismiss this claim are granted with prejudice.

## II. VAGUENESS

CHLA seeks declaratory relief and an injunction against the Room Cleaner Provision and Wage/Benefit Provision for being unconstitutionally vague under both the California and United

States Constitutions.[1] Specifically, CHLA claims that the following things in the Room Cleaner Provision are impermissibly vague: (i) which hotel employers the Ordinance applies to, (ii) which "room cleaners" are covered, (iii) the proper method for calculating square feet of floorspace if room cleaners are working in teams, (iv) what constitutes "checkout rooms" or "additional-bed rooms," and (v) what constitutes the act of cleaning a room. Compl. at ¶¶ 56-63, 64-71. As to the Wage/Benefit Provision, CHLA claims that the definition of "health benefit" and how additional compensation should be paid are impermissibly vague. *Id.*

### A. Standing

The City and Union argue that CHLA lacks standing to bring a facial void-for-vagueness challenge because the complaint fails to include any non-conclusory allegations supporting a claim that the Ordinance has been or is threatened with being unconstitutionally applied to any of its members.[2] City MTD at 10; Union MTD at 16. Without such allegations, they contend, these claims must be dismissed for lack of standing. *Id.* CHLA counters that in *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Supreme Court rejected the argument that a plaintiff must demonstrate a successful as-applied challenge before mounting a facial vagueness challenge. MTD Oppo. at 6. It also cites the Supreme Court's decision in *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) where the Supreme Court analyzed a facial challenge to Section 16(b) of the Immigration and Nationality Act and found it unconstitutionally vague without conducting an as-applied analysis. *Id.*

Whether the Supreme Court's opinions in *Johnson* and *Dimaya* apply beyond cases involving the categorical approach is an unsettled question of law. If they do not, the City and Union are correct that CHLA would lack standing to bring a facial challenge to the Ordinance and

---

[1] The standard for unconstitutional vagueness under the California Constitution and Federal Constitution is the same. *See Calop*, 984 F. Supp. 2d at 994 n.22 (*citing Garcia v. Four Points Sheraton LAX*, 188 Cal. App. 4th 364, 386 (Cal. Ct. App. 2010)).

[2] The City initially argued that CHLA lacked standing to bring its claims generally because the complaint provided only conclusory harms. City MTD at 9-10. In light of CHLA's new evidence in the form of a declaration by CHLA member Ranil Bhukhan containing more concrete factual allegations [Dkt. No. 36-15], the City no longer contests CHLA's standing nor jurisdiction for the ERISA claims. *Id.* at 6 n.9.

16

1 it would lack standing. *See Woodfin*, 2006 WL 2739309, at *20 (rejecting vagueness claim because plaintiff challenging similar Emeryville ordinance was unable to demonstrate standing); *Calop*, 984 F.Supp.2d at 996 (same). Because this area of the law is unsettled, I will consider the merits of CHLA's vagueness claims.

### B. The Facial Challenge

Statutes are presumed to be constitutional and "must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." *Lockheed Aircraft Corp. v. Sup. Ct. of Los Angeles Cty.*, 28 Cal.2d 481, 484, (Cal. 1946). A statute is unconstitutionally vague in violation of due process if it describes the prohibited conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926). Statutes that relate to the "economic regulation" of businesses are "subject to a less strict vagueness test because [their] subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "Due process does not require 'impossible standards' of clarity," *Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015) (*quoting Kolender v. Lawson*, 461 U.S. 352, 361(1983)), or expect "perfect clarity and precise guidance." *Pickup v. Brown*, 740 F.3d 1208, 1233-34 (9th Cir. 2014) (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). The question is whether the measure is capable of a reasonable and practical construction, and whether "it is clear what the statute proscribes in the vast majority of its intended applications." *Gospel Missions of Am. v. City of L.A.*, 419 F.3d 1042, 1047 (9th Cir. 2005) (citations omitted).

Despite CHLA's attempt to inject ambiguity where there is none, a number of the terms here are clearly defined in the statute or are easily discernable. *See* Section 5.93.010. A hotel employer is one who operates a structure as defined by Oakland Municipal Code Section 4.24.020, and contains 50 or more guest rooms, or suites of rooms.[3] *Id.* A "hotel" includes any contracted,

---

[3] Oakland Municipal Code Section 4.24.020 states that "Hotel" means any public or private space or structure for living therein, including but not limited to any: inn, hostelry, tourist home or

17

leased, or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. *Id.* A "room cleaner" is defined as "a hotel employee whose principal duties are to clean and put in order residential guest rooms in a hotel, regardless of who employs the person." *Id.* "Checkout" means a room occupied by guests who are ending their stay at the hotel, and therefore a "checkout" room is a room where the guests have already ended their stay. *Id.* "Additional-Bed Rooms" means a room with additional beds such as cots or roll-aways. *Id.* CHLA's claims based on these four terms are wholly frivolous and immediately fail.

This leaves three things that CHLA argues are impermissibly vague. The first is the proper method for calculating square feet of floorspace. CHLA contends that the statute does not state how floorspace should be calculated when two or more room cleaners are assigned to clean a room together. MSJ at 22. The second is, what constitutes the act of cleaning a room? CHLA questions whether a room cleaner performing only a discrete cleaning service, or a very basic cleaning service, such as emptying a garbage can, replacing the towels, replacing the toiletries, or performing a turndown service counts as cleaning. These questions are inappropriate in a facial challenge because "speculation about possible vagueness in hypothetical situations not before [us] will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1048 (9th Cir. 2005) (*citing Hill v. Colorado*, 530 U.S. 703, 733 (2000)) (internal quotation marks omitted). Regardless, neither of these arguments meets the high bar for vagueness when challenging an economic regulation; CHLA's members also have the ability to clarify the meaning of the regulation through the administrative process. *Hoffman*, 455 U.S. at 498.

The third term CHLA claims to be unconstitutionally vague is "health benefit." Compl. at ¶¶ 60, 68. That term has been defined in Oakland's living wage ordinance since 1998 as payment "towards the provision of health care benefits for employees and their dependents." Oakland Municipal Code 2.28.030(C). The same term was also upheld and found unambiguous a due

---

house, motel rooming house, mobile home or other living place within the city, offering the right to use such space for sleeping or overnight accommodations wherein the owner or operator thereof as defined in subsection (C) of this Section, for compensation, furnishes such right of occupancy to any transient as defined in subsection (D) of this Section.

process vagueness challenge to the Los Angeles living wage ordinance. *See Calop*, 984 F. Supp. 2d at 997-98 (ordinance required that airport employees be paid "ten dollars and thirty cents per hour with health benefits or, if health benefits are not provided, then fourteen dollars and eighty cents per hour"; court held "health benefits" was not vague as applied to a company paying the lower wage and providing no health benefits). The term "health benefit" is a common one and is not unconstitutionally vague.

CHLA has failed to identify any terms in the Ordinance that are unconstitutionally vague. Its motion for summary judgment on this ground is denied and the City and Union's motions to dismiss CHLA's second and third causes of action is granted.

## CONCLUSION

For the reasons stated, CHLA's motion for summary judgment is denied. The City and Union's motions to dismiss are granted. At oral argument, I asked plaintiff's counsel whether he wanted leave to amend if I granted the defendants' motions to dismiss. He waived any additional pleading. Accordingly, this case is DISMISSED.

**IT IS SO ORDERED.**

Dated: June 26, 2019

William H. Orrick
United States District Judge